IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHOYA D.B., | : | CIVIL ACTION |
| Plaintiff | : | |
| v. | : | |
| | : | |
| FRANK BISIGNANO,[1] | : | |
| Commissioner of the Social | : | |
| Security Administration, | : | |
| Defendant | : | NO. 25-89 |

## MEMORANDUM

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE                                                August 20, 2025

Choya D.B. ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner of the Social Security Administration ("the Commissioner"), denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act.  Plaintiff has filed a brief in support of her request for review, the Commissioner has responded to it, and Plaintiff has filed a reply.  For the reasons set forth below, Plaintiff's request for review is denied.

### I.   PROCEDURAL HISTORY[2]

Plaintiff filed her DIB and SSI claims on August 11 and 25, 2021, alleging that her disability began on March 29, 2020.  R. 18.  Plaintiff's claims were denied initially and upon reconsideration; hence, she requested a hearing before an administrative law judge.  *Id.*  A video hearing was held before administrative law judge Bernadette Reiling ("the ALJ"), on January 19,

---

[1] Frank Bisignano became Commissioner of the Social Security Administration on May 7, 2025.  Pursuant to Fed. R. Civ. P. 25(d), Mr. Bisignano is substituted as Defendant in this suit and, pursuant to the last sentence of 42 U.S.C. § 405(g), no further action needs to be taken to continue this suit.
[2] The court has reviewed and considered the following documents in analyzing this case:  Plaintiff's Brief and Statement of Issues in Support of Request for Review ("Pl. Br."), Defendant's Response to Request for Review of Plaintiff ("Resp."), Plaintiff's Reply Brief ("Reply"), and the administrative record.  ("R.").

2024. *Id.* Plaintiff, represented by her current attorney, and vocational expert Samuel Edelman ("the VE") testified at the hearing. *Id.* The ALJ, applying the sequential evaluation process for disability,[3] denied relief, on March 26, 2024. R. 18-32. The Social Security Appeals Council declined to review the ALJ's decision, on November 7, 2024. R. 1-3. Plaintiff then sought judicial review in this court. The parties have consented to this court's jurisdiction, pursuant to 28 U.S.C. § 636(c)(1).

## II.   FACTUAL BACKGROUND

A.   <u>Personal History</u>

Plaintiff, born on February 14, 1967, R. 40, was 57 years old on the date of the ALJ's decision. She completed high school and two years of college; she began working as a phlebotomist in 2008. R. 48-52. Plaintiff lives with her husband, two adult children, and ten year old granddaughter. R. 56.

---

[3] The Social Security Regulations provide the following five-step sequential evaluation for determining whether an adult claimant is disabled:

> 1. If the claimant is working, doing substantial gainful activity, a finding of not disabled is directed. Otherwise proceed to Step 2. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).
>
> 2. If the claimant is found not to have a severe impairment which significantly limits his physical or mental ability to do basic work activity, a finding of not disabled is directed. Otherwise proceed to Step 3. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).
>
> 3. If the claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed. Otherwise proceed to Step 4. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).
>
> 4. If the claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed. Otherwise proceed to Step 5. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).
>
> 5. The Commissioner will determine whether, given the claimant's residual functional capacity, age, education, and past work experience in conjunction with criteria listed in Appendix 2, she is or is not disabled. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

B.       Plaintiff's Testimony

At the January 19, 2024 administrative hearing, Plaintiff testified about her limitations. R. 40-63. She maintains that she cannot work because of constant fatigue, hand pain, lower back pain radiating to her pelvis and buttocks, and neuropathy in her feet. R. 54-55. Plaintiff estimated that she could walk for approximately one block without pain and stand for ten to fifteen minutes. R. 55-56. She estimated that, approximately twenty days each month, she cannot get out of bed because of pain, fatigue and depression. R. 56-57. Because of her symptoms, one of her children and her granddaughter help her perform daily activities. R. 56. Plaintiff also suffers lung spasms, during which she expels air involuntarily.[4] R. 58. On occasion, she experiences so much pain in her hands that she is unable to close them. R. 60. Lupus, with which Plaintiff was diagnosed twenty years ago, affects her ability to concentrate. R. 60-61. Finally, Sjorgen's syndrome causes dryness throughout her body. R. 63.

C.       Vocational Testimony

The VE characterized Plaintiff's past phlebotomist job as light,[5] semi-skilled[6] work which provided no transferrable skills. R. 65, 68. The ALJ asked the VE to consider an individual able to perform light work with additional limitations: occasionally able to climb ramps, stairs, ladders, ropes, and scaffolds; occasionally able to stoop, kneel, crouch, and crawl; frequently able to balance; unable to tolerate concentrated exposure to extreme cold, extreme heat, humidity, vibration, fumes, odors, dusts, gases, and poor ventilation. R. 66. The VE opined that, despite these limitations, such a person could perform Plaintiff's past work as a phlebotomist. R. 67. The

---

[4] During the hearing, Plaintiff experienced these spasms. R. 58-59.

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b).

[6] "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties." 20 C.F.R. §§ 404.1568(b), 416.968(b). It is less complex than skilled work but more complex than unskilled work. *Id.* "A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks." *Id.*

3

VE also identified alternative jobs this person could perform. *Id.* Next, the VE was asked to consider the same individual with the added limitation of being able to understand, remember and carry out only simple instructions. R. 68. The VE opined that this person could not perform Plaintiff's past phlebotomist job; however, they could perform alternative, unskilled[7] jobs. R. 68-69.

The VE opined that any employee who was off task more than 10% of the workday could not sustain employment; he also opined that employers would not tolerate an employee missing more than one and one-half days of work per month. R. 69. Finally, the ALJ asked the VE to consider the second hypothetical again but with the individual limited to sedentary[8] work. R. 69-70. The VE opined that this person could not perform Plaintiff's phlebotomist job. R. 70. The VE was not asked to identify alternative, sedentary jobs. *See id.*

Plaintiff's attorney asked the VE to consider the person in the first hypothetical question with the additional limitation of being capable of only occasional use of the hands for reaching, handling and fingering. R. 70. The VE opined that this person could not perform Plaintiff's past phlebotomist job. *Id.*

### III.  THE ALJ's FINDINGS

In her decision, the ALJ issued the following findings:

1. [Plaintiff] meets the insured status requirements of the Social Security Act through March 31, 2025.

2. [Plaintiff] has not engaged in substantial gainful activity since March 25, 2020, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

---

[7] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength . . . [a] person does not gain work skills by doing unskilled jobs." 20 C.F.R. §§ 404.1568(a), 426.968(a).
[8] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking or standing is often necessary in carrying out job duties." 20 C.F.R. §§ 404.1567(a), 416.967(a).

4

    3.    [Plaintiff] has the following severe impairments: systematic lupus erythematosus, lumbar facet arthropathy, left lower lobe pulmonary infiltrate, thoracic lymphadenopathy, and obesity (20 CFR 404.1520(c) and 416.920(c)).

    4.    [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

    5.    After careful consideration of the entire record, the undersigned finds that [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except they can occasionally climb ramps, stairs, ladders, ropes, and scaffolds; they can occasionally stoop, kneel, crouch, and crawl; they can frequently balance; they should avoid concentrated exposure to extreme cold, extreme heat, humidity, vibration, fumes, odors, dusts, gases, and poor ventilation.

    6.    [Plaintiff] is capable of performing past relevant work as a phlebotomist. This work does not require the performance of work-related activities precluded by [her] residual functional capacity (20 CFR 404.1565 and 416.965).

    7.    [Plaintiff] has not been under a disability, as defined in the Social Security Act, from March 29, 2020, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

R. 20-21, 24-25, 32.

## IV.   DISCUSSION

A.   <u>Standard of Review</u>

Judicial review of the Commissioner's final decision is as follows. The Commissioner's findings of fact will not be disturbed if they are supported by substantial evidence. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). Substantial evidence is not "a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation omitted). While it is more than a mere scintilla of evidence, *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019), it may amount to less than an evidentiary preponderance. *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Overall, this test is deferential to the ALJ, and the court should affirm the ALJ's findings of fact that are supported by substantial evidence, even when the court, acting *de novo,* might have reached a different conclusion. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987). Indeed, the court is not permitted to weigh the record evidence itself. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). By contrast, the Commissioner's legal conclusions are subject to *de novo* review. *Poulos*, 474 F.3d at 91; *Schaudeck*, 181 F.3d at 431.

B.  Burden of Proof in Disability Proceedings

To be found "disabled" under the Act, Plaintiff must carry the initial burden of demonstrating that she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). Plaintiff may establish a disability through: (1) medical evidence meeting one or more of the serious impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1; or (2) proof that the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful work which exists in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(2)(A).

Under the first method, Plaintiff is considered *per se* disabled by meeting one of the "listed" impairments. *Heckler*, 461 U.S. at 460. Under the second method, Plaintiff must initially demonstrate that a medically determinable impairment prevents her from returning to her past

employment. *See Brown*, 845 F.2d at 1214. If Plaintiff proves that her impairment results in functional limitations to performing her past relevant work, then the burden of proof shifts to the Commissioner to prove that work does in fact exist in the national economy which Plaintiff can perform given her age, education, work experience and residual functional capacity. *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Poulos,* 474 F.3d at 92.

C.    Review of the Administrative Law Judge's Decision

Applying the sequential evaluation process, the ALJ determined that Plaintiff could perform her past relevant work as a phlebotomist and, hence, was not disabled. R. 18-32. Plaintiff disputes the ALJ's decision and argues that the ALJ committed reversible legal error by: (1) finding that her Sjogren's syndrome was not a severe impairment; (2) improperly rejecting the opinions of treating rheumatologist, Chantel Park, M.D.; and (3) failing to include all of her credible limitations in the residual functional capacity ("RFC") assessment and hypothetical questions posed to the VE. Pl. Br. at 4-26. Finally, Plaintiff contends that her RFC does not exceed sedentary work; at that level, she would be disabled, under Medical-Vocational Rule 201.06. *Id.* at 26-27. The Commissioner denies Plaintiff's assertions. Resp. at 1-16. This court finds that none of Plaintiff's arguments have merit; the last argument is considered in the course of addressing the second argument, because the last argument is dependent upon Dr. Park's opinions.

1. Plaintiff's Sjogren's Syndrome

Plaintiff argues that the ALJ committed reversible legal error by finding her Sjogren's syndrome was not a severe impairment; additionally, this legal error caused the ALJ to fail to determine if Plaintiff met the listing for Sjogren's syndrome and to mischaracterize Plaintiff's

7

residual functional capacity ("RFC"). Pl. Br. at 4-9. This court finds that all of Plaintiff's assertions of error concerning her Sjogren's syndrome are harmless.

Plaintiff contended that her Sjogren's syndrome caused dryness throughout her body and, particularly affected her ability to chew food and swallow and caused dry eyes. R. 21, 63. The ALJ found that record evidence indicated Plaintiff could eat properly but avoided meat and her vision was correctable to normal. R. 21. Hence, the ALJ concluded Plaintiff's Sjogren's syndrome was a non-severe impairment, because it caused no more than minimal limitation to Plaintiff's ability to perform basic work activities. *Id.*

When an ALJ finds an impairment is not severe but continues the sequential evaluation process ("SEP") beyond step two, any error concerning the impairment's severity is not harmful. *Salles v. Comm'r of Soc. Sec.*, 229 Fed. Appx. 140, 145 n.2 (3d Cir. 2007) (non precedential). Herein, although the ALJ found Sjogren's syndrome not severe, she did find other, severe impairments and continued the SEP up to step four. Hence, any step two error concerning severity was harmless. *Id.*

Next, Plaintiff has failed to identify any evidence in the record that could support a finding that she does meet or equal the listing for Sjogren's syndrome. Instead, she relies solely upon the ALJ's failure to explicitly conclude that she met or equaled the Sjogren's syndrome listing, which is Listed Impairment ("LI") 14.10. Plaintiff's failure to identify record evidence that would support a finding that she meets or equals LI 14.10 means that she cannot demonstrate that any ALJ error in that regard was harmful. *Woodson v. Comm'r of Soc. Sec.*, 661 F. Appx. 762, 766 (3d Cir. 2016) (non-precedential). Since it is her burden demonstrate harmfulness, *id.* (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)), she cannot prevail on this argument.

Plaintiff also contends that the ALJ erred when evaluating her RFC, because he included

8

no Sjogren's sydrome limitations in the RFC assessment. Pl. Br. at 8-9. However, she simply asserts that this was error, without explaining how said error could have affected the outcome of this case. *Id.* Again, since it is Plaintiff's burden to prove harmfulness, her failure to do so means that any error concerning the ALJ's omission of Sjogren's syndrome limitations from the RFC assessment is harmless. *Shinseki*, 556 U.S. at 409.

    2. <u>Dr. Park's Opinions</u>

Next, Plaintiff argues that the ALJ committed reversible, legal error because she did not provide adequate reasons for rejecting the opinion of her treating rheumatologist, Dr. Park. Pl. Br. at 9-18. This contention lacks merit.

Dr. Park opined, *inter alia*, that Plaintiff could not lift even ten pounds; could only stand and walk for up to two hours each day and sit for less than two hours each day; and would miss more than three days of work per month. R. 773-74. Dr. Park's lifting limitation would mean that Plaintiff can only perform sedentary work; the VE opined that, if limited to sedentary work, Plaintiff could not perform her past relevant work, and he identified no alternative, sedentary jobs she could perform. R. 70. Furthermore, if Plaintiff is limited to sedentary work, she would be disabled, pursuant to Medical-Vocational Rule 201.06. Finally, Dr. Park's opinion that Plaintiff would miss more than three days of work each month precludes all work, per the VE. R. 69. Hence, if the ALJ did commit legal error when rejecting Dr. Park's opinions, that error would be harmful and, hence, reversible.

The governing regulations state that, when evaluating medical opinions, an ALJ is only required to explicitly consider supportability and consistency when deciding whether a source's medical opinions are persuasive. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Supportability is the objective medical evidence and explanations the medical source provides. 20 C.F.R. §§

404.1520c(c)(1), 416.920c(c)(1). Consistency requires comparing the medical source's opinions to the other evidence provided by medical and non-medical sources in the record. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The Third Circuit has concluded that these regulations are not inconsistent with the governing statute. *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024)

Herein, the ALJ found that Dr. Park's opinions were unpersuasive because they were: (1) not supported by the explanations the doctor provided, and (2) inconsistent with other medical evidence on the record. R. 31. Additionally, the ALJ identified medical evidence in the record that was inconsistent with Dr. Park's opinions. R. 31. Contrary to Plaintiff's argument,[9] the ALJ did explicitly consider both the supportability and consistency factors. Hence, the ALJ complied with the governing regulations and there is no basis to find error. Moreover, because the ALJ committed no error, there is no basis to conclude, as Plaintiff contends, Pl. Br. at 26-27, that she is only capable of sedentary work.

3. <u>Plaintiff's RFC and the Hypothetical Questions Posed to the VE</u>

Finally, Plaintiff argues that the ALJ erred reversibly because her RFC assessment and the hypothetical questions she posed to the VE did not encompass all of her credibly established limitations; hence, the ALJ could not rely upon the VE's opinion that Plaintiff could perform her past phlebotomist job. Pl. Br. at 18-27. This argument lacks merit.

An ALJ is required to propound hypothetical questions that reflect all of the claimant's credibly established limitations. *Rutherford*, 399 F.3d at 554. Typically, at least one hypothetical question is based upon the ALJ's RFC assessment. *Id.* at 554 n.8. If a hypothetical question is

---

[9] Plaintiff maintains that the ALJ failed to consider supportability because she did not explicitly mention the support Dr. Park cited. Pl. Br. at 12-13. However, the ALJ did explicitly find that Dr. Park's opinions were not supported by the explanation the doctor provided. R. 31. That is sufficient explanation and demonstrates that the ALJ considered supportability, as required by the governing regulations.

deficient, the ALJ cannot rely upon the VE's response to that question as substantial evidence. *Id.* at 553-54 (citations omitted). However, if an ALJ properly discounts particular limitations, their omission from the RFC assessment and the hypothetical questions is not erroneous and an ALJ can rely upon VE testimony that is in response to a hypothetic that omits the uncredited limitations. *Id.* at 555.

In this case, the ALJ rejected Dr. Park's disabling limitations, R. 31, and this court has explained that said decision was made pursuant to a proper application of the governing regulations. *See supra* Section IV(C)(2). Hence, the ALJ committed no error when omitting Dr. Park's limitations from the RFC assessment and the hypothetical questions posed to the VE. *Rutherford*, 399 F.3d at 555.

An implementing order and order of judgment follow.